**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**PAUL M. KROLNIK,**

        Plaintiff,

        -vs-

**Case No. 07-C-64**

**THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,**

        Defendant.

---

# DECISION AND ORDER

---

This is an action to recover long-term disability benefits under an employee benefit plan governed by the Employment Retirement Income Security Act ("ERISA"). Prudential Insurance Company of America ("Prudential") issued a Group Policy to Times Printing Company, Inc., Paul Krolnik's ("Krolnik") former employer. Prudential moves for summary judgment on Krolnik's claim for benefits and for judgment on the pleadings as to its cross-claim against Krolnik. Prudential also moves to strike certain materials submitted by Krolnik that fall outside the administrative record. Krolnik filed a cross-motion for summary judgment. For the reasons that follow, Prudential's motions are granted, and Krolnik's motion is denied.

## BACKGROUND

Prudential is a New Jersey corporation with its principal place of business in New Jersey. Prudential is in the business of insurance, underwriting insurance maintained by employers on

behalf of employees as part of employee welfare benefits plans established pursuant to ERISA. Krolnik resides in the Eastern District of Wisconsin.

Prudential issued Group Contract No. G-41269-WI ("Group Policy") to Time Printing Company. The Group Policy includes long term disability coverage. During February 1993, Krolnik started employment with Times Printing, located in Random Lake, Wisconsin. At all relevant times, Krolnik was an employee of Times Printing and covered under the Long Term Disability Coverage for the Times Printing Company Plan.

Krolnik worked as an On Time Printer (heavy occupation). He went out of work from his position on June 6, 2002 due to hernia and back pain. Krolnik underwent an umbilical hernia repair surgery. Upon recovery from surgery, Krolnik continued to suffer low back pain, neck, and hip pain. On October 8, 2002, Prudential approved Plaintiff's claim for LTD benefits effective September 4, 2002.

On September 29, 2003, Krolnik commenced vocational counseling through the State of Wisconsin. As of September 17, 2004, Krolnik was working through the Department of Vocational Rehabilitation two hours per day, two days per week, inspecting and labeling packages.

In the meantime, Krolnik pursued his application for Social Security Benefits. Prudential retained a consulting firm, Advantage 2000 Consultants, to help Krolnik succeed in his application for SSD benefits.

On or about November 11, 2004, Prudential received notice that Krolnik began working part-time in August 2004 and participated in the Employment Transition Program at The

Threshold Incorporated, a program designed to reintroduce a person into the workforce. Plaintiff ceased working on October 28, 2004 due to physical pain and discomfort he was experiencing and was no longer interested in obtaining competitive employment.

By letter dated December 22, 2004 Prudential notified Plaintiff that the medical information submitted with his claim supported a period of disability through December 31, 2004. Therefore, Prudential had approved LTD benefits through that date and Plaintiff's LTD benefits would be suspended effective January 1, 2005. Prudential requested that Plaintiff provide Prudential with medical records including office visit notes and testing for the period of September 1, 2004 through December 22, 2004 from all of his current treating physicians. Prudential requested that this information be submitted by no later than January 18, 2005. Prudential advised Plaintiff that if the requested information was not received by that date, Prudential would base its decision on the information in Plaintiff's file as of January 18, 2005. Prudential received no response.

Based on the above, Prudential determined that there was no objective medical documentation on file to support Plaintiff's inability to perform the duties of his regular occupation or that of another gainful occupation. Prudential determined that as of February 1, 2005 Plaintiff no longer met the definition of disability as defined in the Group Policy. By a letter dated January 26, 2005 Prudential notified Plaintiff of its decision terminate Plaintiff's claim for LTD benefits effective February 1, 2005.

On or about February 9, 2005, Plaintiff submitted his first appeal for reconsideration to Prudential. By letter dated May 17, 2005, Prudential notified Plaintiff of its determination to

uphold its decision to terminate Plaintiff's claim for LTD benefits effective February 1, 2005. In its letter, Prudential noted that the current medical information in file did not document evidence of any sickness or injury that would prevent Plaintiff from performing the material and substantial duties of another occupation. In addition, Prudential noted that Plaintiff had exhausted the maximum amount of benefits payable for his depression.

On or about July 20, 2005, Plaintiff requested a second appeal for reconsideration of Prudential's decision to terminate his claim for LTD benefits. By letter dated January 18, 2006, Prudential notified Plaintiff of its decision to deny his second request for reconsideration of Prudential's decision to terminate his claim for LTD benefits for the period beyond January 31, 2005.

On February 28, 2006, the Social Security Administration ("SSA") awarded Krolnik Social Security Disability ("SSD") benefits effective July 26, 2002. By letter dated May 23, 2006, Prudential notified Krolnik of an overpayment of LTD benefits in the amount of $35,850.00 due to his award of SSD benefits and requested reimbursement. The Policy provides that Prudential has the right to offset the amount of LTD benefits by "deductible sources of income" including any SSDB the participant receives. The Policy also specifies the procedure if Prudential determines the participant may qualify for benefits under the deductible sources of income section.

The Policy further provides that "Prudential has the right to recover any overpayments due to . . . your receipt of deductible sources of income" and that the participant is required to "reimburse [Prudential] in full [and Prudential] will determine the method by which repayment

-4-

Case 2:07-cv-00064-RTR   Filed 05/30/08   Page 4 of 11   Document 52

is to be made." On December 1, 2003, Krolnik signed a Reimbursement Agreement, under which Krolnik agreed to "repay Prudential immediately the amount paid to me under this Agreement in excess of the amount to which I would have been entitled under the terms of the Plan."

According to the Notice of Award dated April 1, 2006, the SSA notified Krolnik that he was entitled to a period of disability commencing January 1, 2003, and to SSDB under the Social Security Act. Krolnik was awarded past SSDB of $1,203.10 per month effective January 1, 2003. Prudential determined an overpayment of LTD benefits in the amount of $35,850.00 and, pursuant to the Reimbursement Agreement, demanded reimbursement from Krolnik by letters dated April 14, 2006, May 10, 2006, May 23, 2006, and January 17, 2007.

Krolnik contended that the reimbursement amount requested by Prudential included benefits payable to his daughter. By letter dated August 30, 2006, Prudential requested that Krolnik provide Prudential with paperwork from Social Security regarding his daughter's benefits. As of January 17, 2007, Prudential received no response from Krolnik.

**ANALYSIS**

**I.    Summary Judgment**

This matter comes before the Court on cross-motions for summary judgment. Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

-5-

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

A claim for benefits under ERISA "is a matter of contract interpretation. When there are no triable issues of fact, we have held that '[c]ontract interpretation is a subject particularly suited to disposition by summary judgment.'" *Bechtold v. Physicians Health Plan of N. Ind., Inc.*, 19 F.3d 322, 325 (7th Cir. 1993) (quoting *Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1389 (7th Cir. 1993)).

## II.     Motion to Strike

In November 2007, the Court granted Prudential's motion for a protective order and to limit discovery to the administrative record. (D. 26). Krolnik sought discovery of evidence to "fill the gaps" in the administrative record, but the Court denied this request: "the additional information sought by Krolnik is not relevant to the Court's *de novo* review of Prudential's benefits determination. Even if some of the information could be considered relevant or probative, Krolnik fails to demonstrate that the benefits of additional discovery outweigh the associated costs." (D. 26 at 4).

In briefing the motions now before the Court, Krolnik introduced certain evidence which falls outside of the administrative record. *See* Affidavit of Paul Krolnik (D. 32); Affidavit of Alan Olson (D. 45). Prudential moves to strike these affidavits, the attachments thereto, and any corresponding citation in the briefs and proposed findings of fact. Krolnik did not respond to the motion.

The submission of materials outside of the administrative record contradicts the scope and intent of the Court's protective order. While that order was directed towards future discovery, Krolnik cannot circumvent the force of the protective order by surreptitiously filing information outside of the administrative record in support of his motion papers. Prudential's motion to strike is granted.

**III. Claim for benefits**

The parties agree that the Court's review of Prudential's decision to deny LTD benefits is governed by a *de novo* standard of review. Under the *de novo* standard, the Court makes an independent decision as to the claimant's eligibility for disability benefits under the policy, without deference to the administrator. *See Wallace v. Reliance Standard Life Ins. Co.*, 318 F.3d 723, 723 (7th Cir. 2003). Put another way, the Court must decide whether the decision to deny plaintiff's claim for long term disability benefits under the Policy was correct. *See Olson v. Comfort Systems USA Short Term Disability Plan*, 407 F. Supp. 2d 995, 1009 (W.D. Wis. 2005) (citing *Wilczynski v. Kemper Nat'l Ins. Cos.*, 178 F.3d 933, 935 (7th Cir. 1999)).

The policy provides that disabilities "due in whole or part to mental illness . . . have a limited pay period during your lifetime. The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime." (D. 37, Prudential's Proposed Findings of Fact ("DPFF"), ¶ 9). Mental illness is defined by the policy as a "psychiatric or psychological condition regardless of cause" which "includes but is not limited to schizophrenia, *depression*, manic depressive or bipolar illness..." (DPFF, ¶ 9) (emphasis added).

The administrative record reflects that Krolnik was first seen on January 29, 2003 by Dr. Claudia Lipusch, a psychiatrist. Krolnik was diagnosed with Dysthmia and Major Depression. The SSA also noted that Krolnik was impaired due to depression in its determination granting benefits. Therefore, it is undisputed that Krolnik's disability was due, at least in part, to depression or mental illness. (DPFF, ¶¶ 25-26; D. 44, Krolnik's Response to DPFF, ¶¶ 25-26).

Krolnik argues that his disabilities are "not merely mental, but physical in regard to [his] back injury." (Response to DPFF, ¶ 26). This response fails to dispute the material and ultimately dispositive fact that Krolnik's disability is due in part to mental illness. Since Prudential paid Krolnik 24 months of benefits through January 31, 2005, Prudential was entitled to discontinue benefits as of February 1, 2005 under the terms of the policy.

Furthermore, Prudential requested an independent review of Krolnik's medical file from Dr. Richard Ilka. Dr. Ilka concluded that Krolnik could return to unrestricted work duty as a pressman. Prudential conducted a "Transferable Skills Analysis," which indicated several jobs within Krolnik's restrictions, including telephone solicitor, bonder, semi-conductor, engraver-machine, and dispatcher-maintenance. Dr. O'Meara, an attending orthopedist, noted that as of January 14, 2004, Krolnik could return to light duty work. Therefore, in addition to the mental illness limitation, Prudential was also entitled to discontinue disability payments because of Krolnik's capacity to obtain work elsewhere. *See* DPFF ¶ 6 ("After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience"); *see also* DPFF ¶ 7 (defining gainful occupation).

Krolnik argues that Prudential should be "estopped" from denying benefits because of its role in helping Krolnik obtain SSA benefits. *See Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998). As in *Ladd*, estoppel is "technically not applicable here, because [the defendants] were not parties to the proceeding before the Social Security Administration." *Id.* Even though Prudential prevailed in the "practical sense because the grant of social security benefits . . . reduced the amount" of Krolnik's claim, *id.*, the doctrine cannot operate as an independent basis to grant benefits, especially in light of the express exclusions discussed above. *See Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1046 (7th Cir. 2004) ("While Social Security decisions, if available, are instructive, these determinations are not dispositive . . .").

## IV.   Procedural violations

Krolnik makes a variety of claims and allegations regarding Prudential's procedural violations under ERISA while processing his claim and appeals. For example, ERISA and its regulations require a "full and fair" assessment of claims and clear communication to the claimant of the "specific reasons" for benefit denial. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 830-31 (2003). Even if Prudential committed procedural violations, Krolnik's relief would be procedural, not substantive. *See Wolfe v. J.C. Penney Co., Inc.*, 710 F.2d 388, 393-94 (7th Cir. 1983) (where denial letter is insufficient to satisfy § 1133, the claimant "is not entitled to a substantive remedy," but rather remand to the administrator for a determination based upon her supplementation of the record in response to proper notice of denial).

In the instant case, Krolnik is foreclosed from obtaining procedural relief by virtue of the Court's *de novo* determination that Prudential's denial of benefits was correct. *See Fischman v. Blue Cross & Blue Shield of Connecticut, Inc.*, 775 F. Supp. 513, 517 (D. Conn. 1991) (plaintiff cites no authority for an award for procedural violations alone where the plan fiduciary's ultimate decision was correct); *Hamilton v. Mecca, Inc.*, 930 F. Supp. 1540, 1552 (S.D. Ga. 1996) (where plan administrator has failed to comply with ERISA's procedural guidelines under 29 U.S.C. § 1133, proper course of action for the court is remand to plan administrator for full and fair review; where resolution of participant's underlying claim is clear, however, remand is unnecessary).

## V. Prudential's cross-claim

Prudential moves for judgment on the pleadings with respect to its cross-claim for breach of contract. Under the terms of the policy, LTD benefits are offset by the total amount of social security benefits received for the same time period. Krolnik acknowledged as such when he executed a Reimbursement Agreement prepared by Prudential. (D. 7, Exhibit B). All of the aforementioned allegations are undisputed. Prudential is entitled to reimbursement for its overpayment of $35,850.00.

While the Court would normally dismiss this pendent state law claim, "judicial economy, convenience, fairness and comity may point to federal retention of state-law claims . . . when it is absolutely clear how the pendent claims can be decided." *Wright v. Associated Ins. Co.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Prudential's motion for judgment on the pleadings [D. 27] is **GRANTED**;

2. Krolnik's motion for summary judgment [D. 29] is **DENIED**;

3. Prudential's motion for summary judgment [D. 35] is **GRANTED**;

4. Prudential's motion to strike [D. 51] is **GRANTED**; and

5. This matter is **DISMISSED** in its entirety.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2008.

                              **SO ORDERED,**

                              **s/ Rudolph T. Randa**
                              **HON. RUDOLPH T. RANDA**
                              **Chief Judge**